May it please the Court, I am George Ciavelli, representing the appellants today. I would like to reserve two minutes for rebuttal. With me, assisting me, is Stephen Heath of our office. I must say I was astounded by the first case. It's the first time I've ever heard anybody resist a free trip to Italy. Moving on to this case, the Court has limited our time, so I will endeavor to be brief. The key issue in the appellant's view here is the trial court's judge writes failure to comprehend the difference between the first sentence of the receiver's response in his letter of May 25, 2005, stating that Shaban Arianna was a direct participant in a massive securities fraud scheme from the financial information that was also included in that letter. We have communications among three people, and I will use first names here because of the families, I don't mean any disrespect, but Kelly takes it upon herself, she's not a party to the litigation, to contact another non-party, Nick, who is the brother of the receiver, who then contacts the receiver. And if we look at the communication that was given to the receiver, he was told when he tried to find out what was going on by Nick, that Christine was in a relationship with my client for three years, had a child with him, they are in a litigation concerning child support. The question that precipitated that inquiry was simply a question from Kelly asking, what was the settlement, were there any penalties? And she made it very clear, she was asking, and this is in her testimony, in the record, that her question was designed to assist in getting the most child support possible for the nephew. That was the goal. There's a four-part test on the syllabus, right? Exactly. So I just want to make sure, as you are arguing, that at least I understand which of the four prongs... Okay. I am focusing... I'm sorry. Let me just try to eliminate... Yeah. Number one, made a judicial quiz and judicial proceedings. You don't dispute it was, right? I won't be arguing that, yes. No, we're not really disputing that. Okay. So then you've got two, by litigants or other participants authorized by law? There is a dispute about that, as to first, was Kelly authorized by law? There is no showing. And I understand her concern for her sister, but she is, I think what we learned at UCLA, an officious intermeddler. But it's by. You're not really complaining of her statements. Well, the cases, I think, are clear that where the communication is among non-participants or involving non-participants, the litigation privilege does not apply. It is to protect litigation. Kelly was, at best, an officious intermeddler. So if I ask my sister, my brother, my friend to go get the information, the litigation privilege is gone? It may be, if you're not authorized by law to receive that information and to get involved. But she involved herself voluntarily, and we certainly understand why. Her sister was representing herself, and we certainly understand why. But, and the court, in its order, didn't deal with that issue. She is not a defendant here, is she? Who? Kelly. An officious intermeddler. No. I mean, Lucene gets a request saying, I'm calling on behalf of my sister. My sister. Who is involved in litigation, and we're trying to skin her husband as much as we can, for as much as we can. Worm out of him as much as we can. Well, actually, Nick said that Arianna was trying to worm out of paying the support. But in any event, so she says she's calling on behalf of the sister, and for the purpose of aiding in the system of litigation. And, Lucene, you know, was she supposed to investigate her credentials or whether she was truly involved in litigation? Nick, and I believe that the receiver's first responses were appropriate to find out what her standing is, and limit her to what is on the website. Had that happened, there would have been no problem. But the receiver went beyond that and communicated to someone that he knew was not involved in litigation, because he had been told that by Nick. You know, I have to tell you, I get the impression you're arguing something just because you can, rather than arguing something that's persuasive. In response to Judge Kuczynski's first point, our principal focus is on prongs three and four. Right. Why don't you go to prongs three or four instead of wasting time trying to defend something that's not really very defensible? That was Judge Kuczynski's request, so I'm responding to that request. Give it up. Go to the point. I'm happy to go on to the next point. Thank you, Your Honor. All right. With respect to the prongs three and four, which have been shown and deemed to be essentially intertwined, the key is whether the comment had a functional relationship with the issue at hand. There is no question the issue that was before that was submitted to the receiver was support. In the trial court, the appellees argued this was a support case. Nick responds to Dennis, says it was an issue of support. Kelly has said, my inquiry was about support. You're trying to carve out the first sentence. Yes, that is a communication. And ignore the rest. You ask us to look at it, but I have to tell you, you give us 874 in the excerpts and an illegible copy. I mean, we go through this all the time. The excerpts are where you prove your points made in your brief, and 874 is just illegible. I mean, somebody ought to pay attention to these excerpts so we can read them. I was not involved at that time. I apologize to the court. Okay, well, then. No, I apologize to the court for that. Although the statement of the letter is set forth in the briefs. In your brief? I believe it's in the outpost brief. Not the whole letter. Pardon me? Not the whole letter. I agree. That's right, so I have to go to the excerpt, and I can't read it. Well, I was not there at the time. I apologize to the court. I don't understand. Well, presumably, you looked at it in preparing for today's argument. Absolutely. And if I were preparing for an argument, and I know this is the thing the judges are going to look at as illegible, I would have made copies and brought them into court to pass out or maybe sent them in. What exactly does this letter say that we can't read? Siobhan Mariana, and I would have done that, except that it was quoted in. I agree counsel fixed that problem by quoting it in the brief. We don't trust the briefs. We go to the record. Well, I looked at the brief and looked at the – I was able to at least try to read that letter. Siobhan Mariana was a direct participant in a massive securities fraud scheme. This is spelled out in the public documents that accompany this letter. We can confirm that a settlement was reached pursuant to which a payment of approximately $5.4 million was made. The circumstances surrounding this matter are more fully detailed in the enclosed documents. So what's the authority for carving out the first sentence? Suppose that I'm responding to a lawyer, somebody authorized by law who wants to know some information, and I start out the first sentence and I say the defendant is a jerk. And then I go on and I give some information about the thing. Or the defendant is a murderer. Yeah. So the first sentence, you can ignore everything else. You can ignore the context, focus on maybe a word or a sentence. Where is there in California law good authority for the proposition that you can take things out of context, focus on them to the exclusion of everybody else, and avoid the litigation privilege? Is there such a case? In the Rothman case, Your Honor, the court focused on the functional equivalent. And in combining prongs three and four and saying there must be a functional equivalent, a functional relationship to the question, and said you cannot, and I can quote the Rothman court here. So you can parse every sentence in the communication out of context and then determine out of context. Well, there is no context in which this can be deemed to be functionally related to the issue that was submitted to the receiver in this case. You can't simply say, look, he's a. So now you're attacking the entire letter. No. That's the first sentence. Your Honor, if he had just said everything after the first sentence, if he had said, look, you've inquired about the money, he paid 5.4 million, there was a settlement, that answers your question. But he didn't do that. He went ahead and said that he's related to a massive fraud scheme. I'm looking simply for authority that says you can pull each and every sentence completely out of context and take a look at it regardless of what the entire communication talks about. Because in Rothman, the court made clear that what this functional relationship means is. In Rothman, does it say you can take a sentence out of context and that sentence can then be used to avoid the litigation privilege? In Rothman, the court says. Does it say that? If you don't do that, and I quote from Rothman, it would be to provide absolute immunity to the resourceful slander. I would say if you don't do that, if you don't do what? If you don't carve out. Each of the sentences is a communication. There's nothing that says you cannot parse a communication. Each of the sentences is a communication. And what Rothman is. Is Rothman a case where they say we're going to take sentence A and ignore everything else and decide whether that is within or without the communication privilege? It didn't say that specifically, but it said you cannot. Strike specifically, strike specifically. Did it say it at all? It didn't say anything about striking anything. It said that anything that is not functionally related to the issue, in this case the financial support issue, to allow other extraneous matter attacking the other side would be. All right, well then why isn't it related to it? I mean the whole settlement was about a financial fraud. The settlement was about a financial fraud, exactly. Exactly, and so why isn't that first sentence related to the entire subject matter of the communication? But the communication, we have to pick which litigation we're talking about. The litigation we're talking about, if the privilege is going to apply, is not the receiver's litigation. That was over as to my clients. The litigation that is at issue, if there's a privilege and the contender is not, is the support litigation. I completely agree, but the financial information comes from the fraud litigation. So that's how it's related. And our contention is the statement about involved in a massive fraud has nothing to do with the issue at hand in that litigation, which was the amount of support, the amount of money. What they were trying to find out was how much money did he pay? The contention was in the litigation with the receiver, the amount. Which was what? 5.4 million. What kind of litigation was it? Related to the… Massive fraud. Massive fraud by another company. And the question whether the money received by our client were improper. But that has nothing to do with the issue. It is not functionally related to the issue of how much money my client could pay in support for the child. That's the issue. And this statement is not functionally related to that issue. Why is that the case? Why is what the case? The only thing that matters is how much he paid out. I mean, if he's involved in fraud litigation and pays money out in settlement of a fraud claim, then maybe he's the kind of guy that's going to secrete assets and try to keep his wife, and I don't know if he had children or whatever, he's going to try to shirk his support payments. And this may be evidence that one might want to put before the court in having, I mean, the, I don't know what they call it, divorce court these days? Family law? That's it. It used to be called divorce court. I know. I can remember those days, too. Right. You know, look, this guy paid, you know, what did he pay it for? He paid it for fraud. So the court ought not to trust him when he says he doesn't have any money to pay out more in child support. The court ought to really authorize going after him and trying to see where he's hiding assets. First, the receiver's action against him was discouraging. There was a claim. There was no admission of liability. And the only issue, I think, what we're losing here. We're talking about relevance. I agree. There is no relevance to the first statement. The issue was Kelly says, or at least according to Nick, says that Mr. Yanis said he paid 8 million. And all she's asking is what did he pay? I need to know. And she testified. I needed to know to find out what was available for support. He answered 5.4 million. Let's say that's the question she asks. And this guy says, yeah, he paid 5.4 billion. Let me tell you something else that you might find really useful in your litigation. This guy tried to hide assets and tried to, you know, put some money offshore to keep the plaintiffs, in my case, from reaching it. So you might be on the lookout because he might have put some money offshore in your case, too. Is he limited to giving information just limited to the question he's asking? I do not believe that. No, he's not. That would not be functionally related to the support issue. His supposition about offshore money or about anything else is not functionally related to the question that was asked, which is how much did he pay? But it's not relevant to the question asked. The question is whether it's relevant to the litigation. If this person that's being asked one question says, by the way, I have some other information that I think would be relevant to your litigation, why isn't that related as well? Because the functional relationship goes to, at least according to Rothman, goes to the question of what the remedy is going to be. What is the result? The result is going to be a support order, not a search for assets around the country. The result here was going to be a support order. Well, it depends on whether you suspect him to be the kind of guy that would hide assets. There's no evidence of that in the record. There's no evidence that there was an issue about that. There was no suggestion from Kelly about that, either in her deposition or in the communications with Nick and Dennis that were really concerned. You've been a lawyer many years, Mr. Chiavelli. If you were to sort of have a client on the other side, opposing your client, and you got the information that that person is a defrauder and a hider of assets, and somebody, you know, isn't that the kind of information you'd want to know in conducting your litigation, that you find it mighty useful? I say, what do you mean with a slippery character here? We had better be extra careful on behalf of our client, right? You'd want to know that, right? It may be information that I would like to know. That does not make it a litigation privilege. It may still be defamatory, and if it's proved to be true, which is the underlying case, then that's a different issue. And that's where that goes, and that's where much of the appellee's brief has gone. So the question about whether it was true that Mr. Arianna was somehow involved in some sort of scheme, that's the merits of a defamation litigation. And defamation is the statement... You've taken more than your time. Thank you. Thank you, Your Honor. May it please the Court. My name is Mark Donheiser, and I represent the appellees Dennis Racine and Munshfart Copkin-Harr in their defense. Is there anything in your – that you heard today that's not adequately addressed in your brief? Well, the one thing I was going to say, Your Honor, is in defense of counsel here, it is not a copying problem with that letter that you're looking at. Look, we can't read the letter. I don't care what the problem is. That's the way it was submitted to the child court. Okay, you track it back through 16 generations, and you find somebody making a dumb mistake. Yes, Your Honor. I mean, this happens all the time. We talked to a bunch of potential law students yesterday. Are you telling us that you all, if I told you to do this by the next 24 hours, couldn't come up with a clean copy of this letter? I'm asking, you know, if you really had to. Our office could not come up with a copy as exactly like that. There was a dispute below. That has been slightly altered from the one that was actually sent. I mean, somebody, that's a fax of a fax, and the fax numbers have been changed. I mean, it's completely irrelevant. At the very least, the excerpt ought to maintain a document that says, this is what it says. Even if we have to re-type it. The whole thing is about this letter, and we have to get a microscope to read it. I understand, Your Honor. This happens all the time. The photo array comes in. Everybody looks like an Eskimo. I mean, you can't tell whether it was suggestive or not. Absolutely, Your Honor. Nobody pays any attention to the excerpts. You should have been here the entire week, and you'd see that. So we have to figure out what happened, and then we attach consequences. We have a hard time figuring out what happened. I mean, keep pieces of evidence like this. I mean, somebody should look at this and say, boy, this is going to be really hard to read. Let's do something about it. I bet you that's clear if you put your heads together. You could come up with something. We wouldn't have to sit here and guess what the words are. And I know it's in the brief, but we never trust the briefs. We go to the record and the excerpts. It was my brief, Your Honor, that it was in. I know. I know. As far as your – the only thing – You're under arrest. The only thing that I would like to briefly address is the question of the question Kelly asked was not just the amount. I'm quoting from the exchange between brothers, between Nick and Dennis, the receiver. She wants to know how the payment was made, why, and how much it was. Because somebody said it was 5 and it appears to have been 8. I mean, that's what triggered the whole thing, right? That was what triggered the whole thing. But she asked why did he pay $5.4 million. But she's not authorized by law. She's an officious intermeddler. It's still a communication for purposes – a communication with a logical relationship to the litigation. Does Rothman say you can take sentence by sentence out of context? No. I didn't think so. Thank you. Thank you. Yeah, but it's not a breach. I mean, let's just – and by the way, let me also tell you that he picked my pocket while we were riding the bus together. I mean, he sort of adds that sentence. You know, I'm sure that that would not be – Your Honor, could he or the latter responding to this kind of request add anything at all? You know, he has a loathsome disease. You know, he has a – he's a felon. You know, he's much too friendly to small children and animals. You know, anything at all? No. If the communication is related, yes. And that's an unfortunate byproduct of the litigation privilege. And California courts have acknowledged that sometimes an injustice will be done because this is too important to protect the system itself. We want witnesses, litigants, court personnel, judges, everyone to be – You're really biting off much more than you need to chew. I am. I don't know why you're doing it, because you said she asked why. Now you're saying it doesn't matter. You know, he's a pederast. You know, he has syphilis. You asked the question, Your Honor, and I'm giving you what I think the law is on that hypothetical. Okay. Good enough. Keiji Sagi will stand submitted. Do I have 30 seconds? I promise. 30 seconds. All right. I want to correct that last point, and, Your Honor, I had the same concern about the letter when I read that. I certainly understand, and we apologize again. That should not have appeared that way. In terms of why, that was in Nick's question. That wasn't in Kelly's question. He says she wants to know the payment was made, why, and how much it was. Her communication is the settlement made with the other party, were there any civil penalties. She just asked about money. The answer to why is it was a settlement, and it was a settlement. He paid $5.4 million, and anything else you can look on the website, and I agree with Your Honor. This is not, as Rothman put it, a license for a clever slander. You can't just say anything you want, and each sentence is a communication. He could not have said he's a murderer. Okay. Thank you. Okay. Thank you. Keiji Sagi will stand submitted. We are adjourned. All rise for the support for this session. It is now adjourned.
judges: Kozinski, Trott, Fisher